OPINION
Hewett S. Wells appeals from a judgment entry and decree of divorce terminating his marriage to Lisa P. Wells.
Hewett[1] and Lisa were married on December 28, 1990. No children were born of the marriage. They separated on November 11, 1997, when Hewett permanently moved from the marital home. Lisa filed a complaint for divorce a week later.
Lisa testified that her family's partnership purchased the parties' first home on Warm Springs Drive prior to their marriage. Hewett, acting as trustee for the partnership, purchased the property for the partnership, but did not contribute any of his own money toward the purchase. The partnership then rented the property to Lisa. The lease gave Lisa the right to purchase the property.
The family partnership subsequently terminated the lease and transferred title to the Warm Springs Drive property to Lisa. Lisa's partnership interest was diminished by the amount of the down payment on the home. The down payment terminated Lisa's general partnership interest in the family partnership.
Lisa subsequently executed a joint and survivorship deed conveying title to the Warm Springs Drive property to herself and Hewett. Lisa testified that she did not intend to give any interest in the home to Hewett and that he did not pay anything for the interest he received.
When the parties obtained a loan to purchase their second marital home on Stonemill Court for $426,122, they made a down payment of $68,000. Those monies were derived from the following sources: $45,000 from the sale of the Warm Springs Drive property; $18,000 from Lisa's premarital savings; and $5,000 from Hewett's premarital savings. Leah Halfpap, a sales associate with a local realty company for fourteen years, testified that she had performed a comparative market analysis, comparing the Stonemill Court property with similar houses in the community. She opined that the fair market value of the Stonemill Court property was $375,000.
Lisa was employed as a sales representative during the marriage. She developed a product concept that, ultimately, paid her a sales commission of $325,296. The sales contract that produced the commission was executed on May 31, 1998, five and one-half months after Lisa and Hewett had separated.
The trial court entered its judgment and decree of divorce on December 28, 1998. The court found that the parties' equity in their marital residence was worth $60,573. The court awarded Hewett $5,000 of that equity as his separate property. The court awarded the remaining $55,573 plus the residence itself to Lisa as her separate property.
The court also found that the marriage terminated on November 11, 1997, when Hewett left the marital home. The court then concluded that Lisa earned the $325,296 commission after November 11, and awarded the commission to her.
Hewett filed a timely notice of appeal from the judgment and decree. He now presents two assignments of error.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED AS A MATTER OF LAW IN AWARDING THE EQUITY IN THE STONEMILL RESIDENCE TO WIFE.
Hewett argues that the trial court abused its discretion when it awarded him only the $5,000 that he had contributed as a down payment on the Stonemill Court property from his premarital savings. He argues that the trial court should also have awarded him a one-half share of the equity in the property, which totaled $30,286, because he contributed a larger share toward the mortgage payments made on both properties during the marriage and because the Warm Springs Drive property, which produced the bulk of the down payment on the Stonemill Court property, was jointly owned.
Hewett further argues that the joint and survivorship deed to the Warm Springs Drive property that Lisa executed, created a joint interest that the parties shared in the net proceeds realized from its eventual sale, which they contributed to the down payment required to purchase the Stonemill Court property. Thus, Hewett argues, he is entitled to a one-half interest in its equity, or at least more than $5,000.
The trial court found that the Warm Springs Drive property was purchased prior to the parties' marriage by Lisa's family partnership, and that Hewett took title to the property on the partnership's behalf. It found that any commingling of separate properties that occurred when Lisa conveyed the Warm Springs home by joint and survivorship deed did not destroy its character as the separate property that Lisa received from the family partnership. The court also found that the parties' equity in the Stonemill Court property totaled $60,573.67.
A trial court must classify assets as marital or separate and then distribute a spouse's separate property to that spouse. R.C.3105.171(D). Subsections (i) through (vii) of R.C.3105.171(A)(6)(a) define separate property. A court's classification of property as separate or marital will not be reversed absent an abuse of discretion. See Marcum v. Marcum
(Dec. 13, 1996), Mont. App. No. 15718, unreported.
Separate property does not lose its identity merely because it is commingled with other property, unless commingling makes the separate property not traceable to the spouse who claims it. R.C.3105.171(A)(6)(b). The fact that title to the property is jointly owned by both spouses does not determine whether the property is marital or separate. Wolf v. Wolf (Sept. 27, 1996), Greene App. No. 96CA10, unreported.
The spouse who seeks to have an asset classified as separate has the burden to prove that it should be thus classified. Peckv. Peck (1994), 96 Ohio App.3d 731, 734. Lisa presented documents demonstrating that the down payment on the Warm Springs Drive home was obtained from her interest in the family partnership. The joint and survivorship deed that the parties executed may have commingled Lisa's separate property with marital property, but it remained traceable to her interest in the family partnership that was used to purchase the Warm Springs Drive property. Thus, no transmutation occurred.
The trial court did not abuse its discretion in awarding Lisa a greater portion of the equity in the marital home as her separate property. The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN NOT AWARDING TO APPELLANT A PORTION OF WIFE'S EXTRAORDINARY INCOME EARNED DURING THE PARTIES' MARRIAGE.
To be classified as "marital," property must be acquired by one or both of the spouses "during the marriage." R.C.3105.171(A)(3)(a). "During the marriage" is "the period of time from the date of the marriage through the date of the final hearing in an action for divorce," unless the court determines that either of those dates is inequitable. R.C. 3105.171(A)(2).
The trial court found that the parties' marriage terminatedde facto when Hewett left the marital home on November 11, 1997. The court also found that Lisa earned the commission after Hewett left the marital home. The court concluded that the commission was not property that Lisa had acquired during the marriage. Because the court found that the commission was not marital property, it was required to distribute the commission to Lisa as her separate property.
Hewett argues that the commission should be classified as marital property because Lisa performed some of the work that ultimately produced it prior to the de facto termination of their marriage on November 11, 1997. We do not agree. Lisa's right to the commission did not accrue until the contract that produced the commission was signed on May 31, 1998, and the commission was not paid until July 1998. Absent the right to receive the commission, there is no property to divide.
Because Lisa's ownership interest in the commission was not acquired during the marriage, the commission that she subsequently received is her separate property. The trial court thus did not err in awarding the commission to Lisa.
The second assignment of error is overruled.
Having overruled both assignments of error presented, we will affirm the judgment from which the appeal was taken.
BROGAN, J. and WOLFF, J., concur.
[1] For clarity and convenience, the parties are identified by their first names.